UTAH LEGAL SERVICES, INC.
Attorney for Plaintiff
BY: MARTIN S. BLAUSTEIN, #03993
205 North 400 West
Salt Lake City, Utah 84103
mblaustein@utahlegalservices.org
Telephone: (801) 328-8891 ext. 3328
Fax: (801) 990-3947

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SANDRA CAMERON,<br><br>Plaintiff,<br><br>v.<br><br>THE HOUSING AUTHORITY OF THE COUNTY OF SALT LAKE,<br><br>Defendant. | RESPONSE TO MOTION TO DISMISS<br><br>Civil No. 2:15CV00514<br><br>Judge: Clark Waddoups |

Plaintiff, by and through her attorney Martin S. Blaustein of Utah Legal Services, Inc., submits this Memorandum in Opposition to Defendant's Motion to Dismiss.

Defendant, in their presentation of Relevant Facts, appears to be citing factual issues unrelated to the due process claims raised by the Plaintiff. Nonetheless, Plaintiff disputes Defendant's Relevant Facts as follows:

3. Defendant alleges the property owner served Plaintiff with a Three Day Notice to Pay or Quit on April 29, 2014. See Compl. Ex. "F"

Plaintiff Responds: The Three Day Notice to Pay or Quit was served on April 29, 2014. The reference to Ex. "F, however, is not accurate, as Ex "F, dated August 13, 2014, is the Defendant Housing Authority Hearing Termination Decision.

4. Defendant alleges the property owner filed an unlawful detainer complaint on May 5, 2014, citing the Complaint paragraph #14.

Plaintiff Responds: The original Complaint was filed on May 5, 2014. However, paragraph #14 of the Complaint makes reference to the Amended Complaint, filed on May 27, 2014, not the unlawful detainer claim.

7. Paragraphs 7-13 are statements made in the police report, attached as Plaintiff's Complaint, Exhibit "A." The existence of the police report is not in dispute.

15. Defendant alleged on May 27, 2014, the property owner filed an Amended Complaint with the Third District Court at Ex. "D."

Plaintiff Responds: Plaintiff does not dispute that fact. However, Exhibit "D" of the Complaint is one page of the Court Docket, not the Amended Complaint.

16. Defendant stated "At the hearing on June 4, 2014, the property owner and Plaintiff stipulated that plaintiff would vacate the lease premises by June 9, 2014, and she would make payment for unpaid rent, late fees, and costs."

Plaintiff Responds: Plaintiff disagrees as follows: (1) Plaintiff admits she agreed to vacate the premises by June 9th. (2) She disagrees that at the June 4, 2014 hearing she agreed make payments for unpaid rent, late fees and costs. (3) Defendant makes reference to Plaintiff Complaint Exhibit "C." Said Exhibit is the order of the court, signed by the parties on August 27, 2014. (4) Exhibit "D" of Plaintiff complaint is the court docket. Said docket makes reference to the June 4th hearing, in which the court specially stated the order of restitution was not to be issued unless the defendant failed to comply with the stipulation. (5) At the June 4, 2014 hearing, the court did not order Plaintiff to pay anything.

18. Defendant claims "The Third District Court signed an Order of Restitution, but the property owner did not need to enforce it because the plaintiff vacated timely."

Plaintiff Responds: Defendant's allegation is incorrect, per Complaint Plaintiff's Exhibit "D," "The Order is not issued and will not be issued unless the defendant failed to comply with the stipulation." Thus, no order of restitution was issued by the court.

## INTRODUCTION

This case arises out of the Defendant's ("HACSL") termination of Plaintiff's ("Cameron") Section 8 housing voucher, and the Defendant's violation of Ms. Cameron's constitutionally protected right to procedural due process.

Forty-five years ago, in the landmark case of *Goldberg v. Kelly*, 397 U.S. 254 (1970), the U.S. Supreme Court held that the termination of welfare benefits involves state action adjudicating important rights that requires procedural due process. More specifically, the Court held that prior to termination, recipients were entitled to a meaningful hearing that must include: (1) timely and adequate notice detailing the reasons for termination; (2) an opportunity to appear personally at the hearing, present evidence and oral arguments and confront and cross examine adverse witnesses; (3) the right to be represented by counsel; (4) a right to a decision rendered by an impartial decision maker; (5) a right to have that decision based solely on rules of law and the evidence presented at the hearing; and (6) a right to a statement by the decision maker setting forth the reasons for the decision and evidence upon which it was based. *Id.* at 267-71. During the years since *Goldberg*, courts have repeatedly held that the due process requirements handed

down in *Goldberg* also apply in terminating housing benefits. In this case, the Defendant repeatedly violated Ms. Cameron's due process rights and federal regulations during the course of terminating her housing benefits.

The issues in this case are whether the Defendant violated Ms. Cameron's due process rights and federal regulations by: (1) failing to present a prima facie case supporting Ms. Cameron's termination of benefits; (2) upholding the decision to terminate despite a lack of meaningful evidence; (3) denying Ms. Cameron the right to cross examine witnesses the Defendant was relying on in its decision to terminate her housing benefits; (4) failing to provide a termination notice that comports with due process requirements, including specifying the basis of termination; and (6) issuing a written decision that did not include any elements of fact or law as to the reasons for the decision which did not provide Ms. Cameron with an informative basis for the decision.

LEGAL STANDARD FOR MOTION TO DISMISS

"[A]n action, **especially under the Civil Rights Act**, should not be dismissed at the pleadings stage unless it appears to a certainty that Plaintiff [is not] entitled to [any] relief under any state of facts, which could be proved in support of [its] claims." *Escalera v. N.Y. City Hous. Auth.*, 425 F.2d 853, 857 (2d Cir. 1970) (emphasis added); *See also Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987) ("dismissal of complaints filed under civil rights statutes are scrutinized with special care."). In making its decision, this Court should accept all facts contained in the non-moving party's (Plaintiff) pleadings as true and grant all reasonable inferences in the Plaintiff's favor. *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

ARGUMENT

**I. MS. CAMERON'S CONSTITUTIONALLY PROTECTED RIGHT TO PROCEDURAL DUE PROCESS WAS REPEATEDLY VIOLATED BY THE DEFENDANT IN ITS TERMINATION OF HER SECTION 8 VOUCHER.**

The Defendant asks this Court to find in its favor solely based on its purported compliance with the Section 8 Housing Program regulations. In doing so, the Defendant asks this Court to ignore long-standing Constitutional due process protections for regulatory and inferior Section 8 Housing regulations. For this Court to adopt the Defendant's position would be in direct violation of the U.S. Supreme Court's holding in *Goldberg v. Kelly* and numerous holdings over the past forty five years.

A. MS. CAMERON HAD A PROTECTED PROPERTY INTEREST IN HER SECTION 8 VOUCHER AND WAS ENTITLED TO PROCEDURAL DUE PROCESS PRIOR TO ITS TERMINATION.

"The due process clause of the Fourteenth Amendment prohibits the states from depriving any person of 'life, liberty, or property', without 'due process of law.' The modern analysis of the application of the due process clause to denial of public assistance benefits is set forth in the landmark case of *Goldberg v. Kelly*." *Ferguson v. Metro. Dev. and Hous. Auth.*, 485 F. Supp. 517, 521 (M.D. Tenn. 1980).

In *Goldberg*, Chief Justice Brennan held that welfare recipients have a property interest in continued receipt of benefits and that procedural due process requirements must be applied before a state agency can terminate those benefits. *Goldberg*, 397 U.S. at 269-70. Since that case, courts have continued to recognize that those same due process requirements apply equally in the context of subsidized housing benefits. *See, e.g.*, *Ferguson*, 485 F. Supp. at 521 ("It is similarly undisputed that denial of benefits by local administrators of federal housing programs, like denial of other forms of public assistance, is a denial of an interest protected by the Fourteenth

Amendment and therefore falls with the *Goldberg* analysis."); *Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1002 (4th Cir. 1970) ("Whatever question there might have been in the application of the due process clause or the scope of the protections which it affords with regard to the eviction of tenants in public housing has been laid to rest by the decision in Goldberg."); *Escalera*, 425 F.2d at 861 ("The government cannot deprive a private citizen of his continued tenancy, without affording him adequate procedural safeguards even if public housing could be considered a privilege."). *See also* 55 FR 28538 (July 11, 1990) ("PHAs [Public Housing Authorities] must adopt written informal pretermination hearing procedures for participants, which fully meet the requirements of *Goldberg v. Kelly*").

Defendant cites Section 8 Housing regulations in support of its argument that due process requirements were met in this case. What Defendant fails to address is that procedural safeguards of *Goldberg* still apply to Section 8 tenants even where these housing regulations are allegedly satisfied.

B. THE PROCEDURAL DUE PROCESS ENTITLED TO VOUCHER HOLDERS LIKE MS. CAMERON WAS SET FORTH BY THE U.S. SUPREME COURT IN *GOLDBERG* AND HAS BEEN FURTHER DEFINED BY LOWER COURTS.

The U.S. Supreme Court has held that a welfare benefits recipient—which has been extended to recipients of housing assistance benefits by lower courts—is entitled, prior to termination, "a meaningful hearing [that] must include: (1) timely and adequate notice detailing the reasons for termination; (2) an opportunity to appear personally at the hearing, present evidence and oral arguments, and confront and cross examine adverse witnesses; (3) the right to be represented by counsel; (4) a right to a decision rendered by an impartial decision maker; (5) a right to have that decision based solely on rules of law and the evidence presented at the hearing; and (6) a right to a statement by the decision maker setting forth the reasons for the decision and

evidence upon which it was based." *Ferguson*, 485 F. Supp. at 521 (citing *Goldberg*, 397 U.S. at 267-271).

1. Defendant's notice of termination was procedurally insufficient because it was conclusory and lacked factual detail as to the reason for termination.

The termination notice must contain a brief statement of the reasons for the termination decision, and the Defendant may only rely upon the grounds for termination contained in the termination notice. *See* 24 C.F.R. § 982.555(c)(2); *Edgecomb v. Hous. Auth. of the Town of Vernon*, 824 F. Supp. 312, 314-15 (D. Conn. 1993); *Driver v. Hous. Auth. of Racine Cnty.*, 713 N.W.2d 670, 675-76 (Wisc. App. 2006); *Billington v. Underwood*, 613 F.2d 91, 93-94 (5th Cir. 1980); *State ex rel Smith v. Housing Authority of St. Louis*, 21 S.W.3d 854 (Mo. App. 2000); *Escalera*, 425 F. 2d 853 (2d Cir. 1970).

In *Edgecomb*, the Section 8 participant had driven her brother—who was visiting her—to the store. In the parking lot of the store, the brother sold cocaine to two men. Based on that incident, Edgecomb was arrested and charged with conspiracy to sell cocaine. Shortly thereafter, the housing authority sent Edgecomb a notice stating she was being terminated for "…having engaged in drug related criminal activity or violent criminal activity, including criminal activity by any family member and is in violation of HUD regulations at 24 CFR 882.118(b)(4)." *Edgecomb*, 824 F. Supp. at 313. The *Edgecomb* court found the notice to be a violation of due process. *Id.* at 314. In its analysis the court noted that "the requirement of the notice is to inform the tenant of the allegations so that he can prepare a defense." *Id.* (citing *Escalera*, 425 F.2d at 862).

Similarly, in *Escalera*, the court found the following notices to tenants inadequate: as to Mr. and Mrs. Rolle, a "[r]ecord of antisocial activities and arrests of your son, Fred, Jr., constituting a threat to the peace and safety of the community," and as to Mr. and Mrs.

Humphrey, "Illegal acts of Mr. Humphrey, having an adverse effect on the project and its tenants." *Id.*

Thus, notice should be "sufficiently specific…to enable to applicant to prepare rebuttal evidence to introduce at his hearing appearance." *Edgecomb*, 824 F. Supp. at 315 (citing *Billington*, 613 F.2d 91, 94 (5th Cir. 1980). The *Edgcomb* court held that the notice "failed to set forth a factual statement of the incident or incidents which constituted the grievance." *Edgecomb*, 824 F. Supp. at 315 (citing *Hous. Auth. of King Cnty. v. Saylors*, 578 P.2d 76, 79 (1978). The notice sent to Edgecomb "did not indicate which family member committed the proscribed acts, what the nature of the crime was, or when the relevant acts were committed. Nor did it provide notice of adverse evidence to that they would be able to rebut it," *Id.* (citing *Robbins v. United States R.R. Ret. Bd.*, 594 F.2d 448, 453 (5th Cir. 1979). "The notice merely restated the regulation relied on. A notice which merely parrots the broad language of the regulations is insufficient." *Id.* (citing *Billington*, 613 F.2d at 94).

Finally, the court held that a termination notice compliant with *Goldberg* would state the particular felony and the person who allegedly committed it, and would give a brief factual statement concerning the incident. "Such would impose no significant burden upon the [housing authority], while the additional safeguards thus provided would reduce significantly the risk of an erroneous deprivation of Section 8 benefits." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976).

In this case, the Defendant stated the basis for Ms. Cameron's termination as:

> We have received a copy of the eviction, lease violations issued from April 22, 2014 and May 23, 2014 for NON-PAYMENT OF RENT AND CRIMINAL ACTIVITY. This is a violation of your program responsibilities.

*See* Complaint, July 17, 2015, Exhibit E.

The Defendant did not provide any factual information surrounding its stated reason for Ms. Cameron's termination, such as the nature of the purported criminal activity, the individuals involved, or the date of the criminal activity. It refers to lease violations and an eviction notice without elaborating upon the nature of the lease violations and eviction. Nowhere in the notice did the Defendant provide Ms. Cameron with sufficient facts to put her on notice of the basis of the termination of her housing assistance. Defendant's reference to non-payment of rent and criminal activity "merely parrots the broad language" of housing regulations.

The notice also falls short of the strict compliance standard cited in *Driver*, which held that "public policy mandates strict compliance regarding the written notice requirement. Due process imposes the burden of providing adequate notice on the government, not on the individual." *Driver*, 713 N.W.2d at 678 (citing *Ortiz v. Eichler*, 616 F. Supp. 1046, 1062 (D. Del. 1985). In *Driver*, the court rejected the housing authority's argument that its termination notice was sufficient because the tenant acknowledged it had actual knowledge of the basis for termination. This demonstrates the importance courts place on strict compliance with procedural due process requirements – since actual knowledge on the part of a tenant cannot cure the housing authorities vague and conclusory notice, no argument the Defendant sets forth in defense of its insufficient notice should overcome its violation of strict compliance.

2. <u>The hearing officer's written decision does not comport with due process requirements as it was a bare, conclusory statement that did not state the evidence upon which the decision was based.</u>

Defendant argues that the hearing decision did not violate due process because the decision provided the reason for the decision, a summary of evidence, and citations to applicable regulations relevant to the case. However, this statement of decision must "be truly informative as to the reasons for the decision" and should include "a short statement of the elements of fact or

law on which the decision is actually based." *Brantley v. W. Valley City Hous. Auth.*, Case No. 2:08CV573DAK (D. Utah Feb. 4, 2009) (citing Section 8 Housing Assistance Payments Program; Existing Housing, 49 FR 12,215 (March 29, 1984)). A bare, conclusory statement of the decision that does not inform the participant of the reason for the decision is insufficient. *Id*. *See also Driver*, 713 N.W.2d at 677*; Costa v. Fall River Cnty. Hous. Auth.*, 881 N.E.2d 800, 810 (Mass. App. Ct. 2008); *Edgecomb*, 824 F. Supp. at 316.

In *Brantley*, Utah District Court Judge Dale A. Kimball decided that a written hearing decision fell short of due process standards for several reasons: the decision referred to documentation, but did not identify anything in particular in support of its decision; there was no application of the facts or mention of Brantley's arguments; the hearing officer presented a conclusory statement of the decision with no reasons to support it; and the hearing officer relied on its position that state criminal proceedings against Brantley met the preponderance of the evidence requirement to support a finding of "criminal activity." *Brantley*, Case No. 2:08CV573DAK (D. Utah Feb. 4, 2009).

In the *Driver* case, the court held the written decision provided to Driver fell "appallingly short of the mark" where the written decision contained no facts relating to the incidents giving rise to the termination decisions; did not mention any specific evidence the hearing officers relied on; did not state the elements of law motivating the court's conclusion; and cited no policy, regulation, or other authority indicating what a family obligation is or how the plaintiffs' acts or omissions fail to meet the pertinent legal requirements. *Driver*, 713 N.W.2d at 677-678. In holding that the written decision is *Costa* was deficient, the court stated that "the… decision consisted of less than a page and referred only to the police report and newspaper article." *Costa*, 881 N.E.2d at 810 (the police report and newspaper article were two pieces of evidence

presented and entered into evidence at the hearing). It contained no reference to legal standards… or to the information submitted by Costa. *Id.*

Also persuasive is the holding in *Edgecomb*, wherein the court held the written decision was contrary to HUD regulations and requirements. Specifically, the court found that the hearing officer's statement that "there was a preponderance of evidence that indicated that a family member did engage in such drug related activity while on the Section 8 program, which is a violation of 24 C.F.R. 882.118…" was conclusory and had to be considered insufficient. *Edgecomb*, 824 F. Supp. at 316. The court also stated that the "opinion did not state the elements of fact or law on which the decision to uphold the termination of assistance was based. Nor did the hearing officer specify the reasons for her determination or indicate the evidence on which it rested." *Id.* at 316.

In this case, the hearing officer's written decision set forth a list of relevant regulations and policies, provided a summary of evidence presented at the hearing, and concluded that "Based on a preponderance of evidence indicating serious lease violations that lead to eviction, the Hearing Committee has made the decision to support the termination of our Section 8 Voucher[.]" *See* Complaint, July 17, 2015, Exhibit F. After its one-sentence conclusion, it lists five boilerplate paragraphs from the Code of Federal Regulations and the PHA policy without further comment.

Additionally, part of the hearing officer's summary of evidence included a paragraph stating facts from the May 7, 2014 police reports which alleged criminal activity. According to the Housing Assistance Payment Contract (HAP) made between the Housing Authority and the landlord, the owner "may only terminate the tenancy in accordance with the lease and HUD requirements." *See* Complaint, Exhibit B. The grounds for termination for criminal activity

stated in the HAP Contract permit termination if a member of the household or a guest "under a resident's control" engages in criminal activity. *See* Complaint, Exhibit B.

In the hearing decision, the hearing officer made no findings regarding criminal activity or rent owing. See Complaint, Exhibit F. At most, the hearing officer recited some facts from the alleged criminal activity on May 7, 2014 in an evidentiary summary, but the facts failed to demonstrate that Ms. Cameron participated in any criminal activity; that she exercised control over any of the individuals involved in the events of May 7, 2014; and that any of the individuals involved in the criminal activity were in fact "guests" of Ms. Cameron.

In light of the relevant federal regulations, and the *Brantley*, *Costa*, *Driver*, and *Edgecomb* cases, and the insufficiency of evidence to form the basis of its decision, the hearing officer's written decision in this case fails in virtually every way: (1) the reasoning is comprised of one single and conclusory sentence; (2) the reasoning does not state any elements of law or fact supporting the termination; (3) the reasoning does not state a single fact related to the alleged incidents or evidence submitted at the hearing; (4) the reasoning does not state what the "serious lease violations" entailed; and (5) it does not indicate what evidence was relied upon.

In summary, the decision was far from being "truly informative as to the reasons for the decision." As a matter of law, this court should find that the written decision violates federal law and Ms. Cameron's due process rights.

3. <u>The hearing violated Ms. Cameron's right to confront and cross-examine all witnesses upon whose testimony the hearing officer relied.</u>

The Defendant argues that procedural due process requirements were met during the hearing because, although the police officers for the May 7, 2014 dispatch were not present, the Plaintiff had the opportunity to present her evidence and question any witnesses present at the hearing. The Defendant also argues that evidentiary hearsay rules are inapplicable in

administrative hearings. Hearsay or not, the applicable regulation grants a tenant the right to "confront and cross-examine **all witnesses** upon whose testimony or information the PHA … relies" in forming its decision. 24 C.F.R § 966.56(b)(4) (emphasis added). The inability to cross-examine witnesses is "fatal to the constitutional adequacy of the procedures." *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970).

Where state action "seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* at 270 (citing *Greene v. McElroy*, 360 U.S. 474, 496-7 (1959)). This is important in the case of documentary evidence as well as testimony by individuals "whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Id*.

As addressed in subsection "2" of this pleading, the precise evidence upon which the hearing officer relied is this case is unclear. The hearing officer listed an evidentiary summary, including the alleged criminal activity that took place on May 7, 2014. *See* Complaint, Exhibit F. Because the police reports from May 7, 2014 were introduced into evidence, read by the hearing officer, and presumably relied upon by the hearing officer in rendering a decision, due process requires that the police officers be present at the hearing so that Ms. Cameron could have the opportunity to cross-examine them about their reports. The officers' absence at the hearing is fatal to the proceeding because it denied Ms. Cameron this right.

CONCLUSION

For all the above reasons, the hearing notice and hearing decision did not comport with the procedural due process protections outlined in *Goldberg.* Thus, this court should therefore reject the Defendant's Motion to Dismiss.

DATED this 11th day of September, 2015.

UTAH LEGAL SERVICES, INC.
Attorneys for Defendant.

/s/____________________________
BY: MARTIN S. BLAUSTEIN